IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JASON BRISMAN,

                Plaintiff,      Civil Action No.
                                        9:15-CV-0712 (LEK/DEP)
  v.

QUINN, Lieutenant, Auburn
Correctional Facility, *et al*.,

                Defendants.
_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

BARCLAY DAMON LLP             GABRIEL M. NUGENT, ESQ.
Barclay Damon Tower
125 E. Jefferson St.
Syracuse, NY 13202

SYRACUSE UNIVERSITY           ABBY R. PERER, ESQ.
Office of General Counsel
900 S. Crouse Ave., Ste. 513
Syracuse, NY 13244

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN     KYLE W. STURGESS, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

### REPORT AND RECOMMENDATION

Plaintiff Jason Brisman, a New York State prisoner, has commenced this action against forty-five defendants, all but one of whom were employees working at the correctional facility in which he was housed at the relevant times, asserting civil rights claims pursuant to 42 U.S.C. § 1983. Over the course of the litigation, the scope of plaintiff's claims has been narrowed and currently involves only three causes of action asserted against seven defendants.

In defense to one of plaintiff's remaining claims, defendants have argued, *inter alia*, that plaintiff failed to exhaust the administrative remedies available to him as a prison inmate before commencing this suit. The matter has been referred to me for the purpose of conducting an evidentiary hearing and issuing a report and recommendation addressing the issue of exhaustion. Based upon the evidence adduced at that hearing, I recommend that plaintiff's excessive force claim asserted against defendants Quinn, Yung, Osborne, Johnston, and Lepinskie be dismissed.

I.   BACKGROUND

Plaintiff is an inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision

("DOCCS"). *See generally* Dkt. Nos. 1, 39, 47. While he is now incarcerated in the Wende Correctional Facility, at the times relevant to his claims in this action, he was confined in the Auburn Correctional Facility ("Auburn"), located in Auburn, New York. Dkt. No. 1.

Plaintiff's complaint in this action was filed on June 10, 2015, and alleged civil rights violations against forty-five individuals. Dkt No. 1. On August 28, 2015, Senior District Judge Lawrence E. Kahn issued a decision and order pursuant to 28 U.S.C. §§ 1915(e), 1915A granting plaintiff's *in forma pauperis* ("IFP") application and dismissing several claims and thirty-four defendants from the action. Dkt. No. 5.

On October 2, 2016, defendants filed a motion for summary judgment arguing that plaintiff's remaining causes of action were subject to dismissal for various reasons, including his failure to exhaust the available administrative remedies prior to filing suit. Dkt. No. 29. After the motion was fully briefed, I issued a report on August 16, 2017, recommending that the motion be granted in part, but otherwise denied. Dkt. No. 43. In relevant part, I recommended that plaintiff's Eighth Amendment excessive force claims against defendants Quinn, Yung, Osborne, Johnston, and Lepinskie survive defendants' motion based on the record then before the court, which was equivocal as to whether plaintiff had fully exhausted

3

those claims. Dkt. No. 43 at 19-21. In order to resolve the question of exhaustion, I recommended that the court conduct an evidentiary hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011), prior to any trial in this case to develop a factual record and permit the court to make a final determination regarding whether plaintiff exhausted the available administrative remedies concerning that claim. *Id.* at 21. In a decision and order dated September 7, 2017, Judge Kahn adopted that recommendation and referred the matter to me for purposes of holding an exhaustion hearing.

On April 11, 2018, in accordance with Judge Kahn's order and referral, I held an evidentiary hearing concerning plaintiff's excessive force claim asserted against defendants Quinn, Yung, Osborne, Johnston, and Lepinskie. Text Minute Entry Dated April 11, 2018. Plaintiff was represented at that hearing by *pro bono* counsel assigned by the court.[1] *Id.* During the hearing, plaintiff testified on his behalf, claiming that he filed and pursued to completion a grievance concerning the excessive force claim at issue. Defendants, in turn, offered three witnesses in support of

---

[1] By order dated January 10, 2018, I appointed *pro bono* counsel, Gabriel M. Nugent, Esq., to represent plaintiff for purposes of the evidentiary hearing. Dkt. No. 49. A notice of appearance was later filed for Abby R. Perer, Esq., who also represented plaintiff at the evidentiary hearing. Dkt. No. 50. The court extends its thanks to Attorneys Nugent and Perer for their competent and professional efforts on behalf of plaintiff.

their contention that plaintiff failed to exhaust the available administrative remedies prior to filing suit. *Id.* At the conclusion of the hearing, the parties were directed to submit written arguments. *Id.* Those submissions have since been received, Dkt. Nos. 59, 60, and the matter is now ripe for the issuance of report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.  DISCUSSION

    A.  Exhaustion of Administrative Remedies: Controlling Legal Principles

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534

5

U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord*, *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[2]

In New York a grievance procedure, designated as the Inmate Grievance Program ("IGP"), is available to state prison inmates complaining of the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of multiple steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate

---

[2] While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.*

As is pertinent to this action, if an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent. 7 N.Y.C.R.R. § 701.8(b). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(f).

If the inmate is not satisfied with the superintendent's decision, he can appeal it to the DOCCS Central Office Review Committee ("CORC"). 7 N.Y.C.R.R. § 701.8(h). Such appeal must be taken within seven days after an inmate receives the superintendent's written decision. *Id.* The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i)(ii).

As can be seen, at each step of the IGP process, a decision must be rendered within a specific time period. 7 N.Y.C.R.R. § 701.5. Where a timely response is not rendered, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required steps of the above-described IGP prior to

7

commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to

8

prisoners under the PLRA.[3] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage or a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

B.  Analysis

It is undisputed that plaintiff filed a grievance at Auburn concerning the incident of May 4, 2015, involving his allegations that defendants Quinn, Yung, Osborne, Johnston, and Lepinskie assaulted him. Dkt. No. 1-2 at 27-29; Dkt. No. 29-5 at 4, 20-22. That grievance was dated May 15, 2015, and is identified in the record as AUB-67240-15. *Id.* In accordance

---

[3]  According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

with the IGP, because plaintiff's grievance complained of staff misconduct, it was forwarded directly to the superintendent at Auburn. 7 N.Y.C.C.R. § 701.8. The superintendent's response denying that grievance is dated June 23, 2015. Dkt. No. 29-3 at 197; Dkt. No. 34 at 65. Plaintiff's complaint in this action, however, is dated June 6, 2015, seventeen days before the superintendent responded to plaintiff's grievance.[4] Dkt. No. 1 at 37. In response to defendants' motion for summary judgment, plaintiff insisted that he exhausted the available administrative remedies and offered a copy of an appeal to the CORC as proof. Dkt. No. 34 at 65. Even assuming he actually filed the appeal, it was dated July 7, 2015, well after the filing of his complaint in this matter. *Id.* Based on the chronology, it is not possible that plaintiff fully exhausted the available administrative remedies by filing his appeal to the CORC prior to commencing this action, as required by the PLRA.[5]

---

[4]    The court received plaintiff's complaint on June 10, 2015, thirteen days before he received a response to his grievance. Dkt. No. 1 at 1.

[5]    Even assuming that plaintiff did exhaust administrative remedies after this action was filed, it does not protect against dismissal because the PLRA mandates exhaustion *before* a lawsuit is filed. *See, e.g., Neal v. Goord*, 267 F.3d 116, 123 (2d Cir. 2001) ("[A]llowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); *see also Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 36 (1st Cir. 2002) ("Exhaustion subsequent to the filing of suit will not suffice." (collecting cases)).

In any event, based on the evidence adduced at the recent hearing, I find it implausible that plaintiff actually filed an appeal of the superintendent's denial of his grievance to the CORC. Rachel Seguin testified that, in her capacity as the DOCCS Assistant Director of the IGP, she searched the CORC's records for evidence that plaintiff appealed grievance number AUB-67240-15, and she found none. In addition, she found no correspondence whatsoever from plaintiff concerning that grievance, including any inquiries into the status of that alleged appeal. Defendants also called Cheryl Parmiter, the Auburn IGP Supervisor, as a witness at the hearing. She testified that, although she was able to locate plaintiff's grievance packet concerning grievance number AUB-67240-15, it contained only plaintiff's grievance and the superintendent's decision. She did not locate plaintiff's alleged appeal to the CORC. Parmiter further testified that, in order to appeal a superintendent's decision concerning a grievance that was originally filed at Auburn, the inmate must send the appeal to her office, where it is logged in and forwarded, together with the entire grievance packet, to the CORC. Accordingly, had plaintiff filed an appeal to the CORC concerning grievance number AUB-67240-15, Parmiter would have a record of it.

Plaintiff's contention that he appealed the superintendent's decision

to the CORC is simply not credible in light of his prior grievance history and his testimony at the hearing. In support of their motion for summary judgment, defendants adduced evidence showing that, between 2014 and 2015, plaintiff filed sixty-two grievances and successfully appealed forty-nine of those grievances to the CORC.[6] Dkt. Nos. 29-4, 29-5. During his testimony, plaintiff acknowledged his extensive experience in filing grievances. In addition, in response to the court's questioning at the hearing, plaintiff stated that the CORC's mailing address was provided to him, and that he addressed the envelope in which he enclosed his appeal using that address and sent it directly to the CORC. Later in the hearing, however – after Parmiter testified that inmates are instructed to mail their appeals to the IGP office located in the prison facility in which the grievance was originally filed – plaintiff recanted that testimony and stated that he mailed his appeal to Parmiter at Auburn. This gross inconsistency eviscerated plaintiff's credibility.

Finally, I have considered whether the IGP was available to plaintiff in accordance with the PLRA and *Ross*. There is nothing in the record, and no evidence was adduced at the hearing, to suggest that the IGP was

---

[6]   Seguin testified at the hearing that, as of April 6, 2018, plaintiff had filed seventy-nine appeals to the CORC.

unavailable to plaintiff at all relevant times. While it is true that plaintiff was transferred from Auburn to Southport Correctional Facility after he filed his grievance at Auburn, plaintiff has never contended that such transfer interfered with his ability to complete the grievance process.[7] Moreover, plaintiff has also never argued that the relevant provisions set forth in the IGP were opaque or vague such that an ordinary prisoner might be confused about how to exhaust the administrative process, nor could he in light of his extensive grievance history.

In summary, because the dates on which plaintiff received the superintendent's response and filed his complaint in this action reflect that plaintiff could not possibly have exhausted the available administrative remedies prior to commencing this action, and because, in any event, plaintiff's inconsistent testimony at the hearing rendered him not credible, I recommend dismissal of plaintiff's excessive force claim asserted against defendants Quinn, Yung, Osborne, Johnston, and Lepinskie based on his failure to exhaust.

---

[7]   Although plaintiff testified at the hearing that a corrections officer at Southport Correctional Facility spat on one piece of his legal mail, plaintiff did not testify that other mail, including any grievance mail, was tampered with.

13

III. <u>SUMMARY AND RECOMMENDATION</u>

Based on the foregoing, it is hereby respectfully

RECOMMENDED that plaintiff's Eighth Amendment excessive force claim asserted against defendants Quinn, Yung, Osborne, Johnston, and Lepinskie be dismissed based upon plaintiff's failure to exhaust available remedies before commencing suit; and it is further

RECOMMENDED that only plaintiff's First Amendment mail interference claim asserted against defendant Volpe and First Amendment retaliation claim asserted against defendant McCabe proceed to trial.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: April 24, 2018
Syracuse, New York

David E. Peebles
U.S. Magistrate Judge